IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

TONY S. KENNEDY,

    Plaintiff,
vs.             **Case No. 08-4022-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

    Defendant.

---

**MEMORANDUM AND ORDER**

  Plaintiff has filed an application for social security disability benefits. Plaintiff alleges an onset date of January 16, 2003. The application was denied by defendant on the basis of the October 30, 2006 opinion of an administrative law judge (ALJ). This case is now before the court to review defendant's decision to deny benefits.

I. STANDARD OF REVIEW

  The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record

fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn, 21 F.3d at 984.

II.  ALJ DECISION (Tr. 14-22)

There is a five-step evaluation process followed in these cases.  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's applications should be denied on the basis of the fourth and/or fifth steps of the evaluation process.  The ALJ decided that plaintiff could perform his previous job as a general hardware salesperson.  The ALJ further found that defendant retained the residual functional

capacity (RFC) to perform such occupations as: telephone solicitor and general merchandise salesperson.

More specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. He determined that plaintiff has the severe physical impairment of a degenerative disc - L3 to S1, and the non-severe impairment of depression.

The ALJ considered plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to be "not entirely credible." (Tr. 19).

According to the ALJ, plaintiff retained the RFC:

> to perform light work which demands lifting/carrying 20
> pounds occasionally and 10 pounds frequently; sitting 6
> hours in an 8 hour workday; standing or walking 6 hours
> in an 8 hour workday. [Plaintiff] could not perform work
> requiring more than occasional climbing and should avoid
> exposure to vibration.

(Tr. 17). The ALJ further agreed with the conclusion of a state agency medical consultant that "plaintiff's depression caused no restrictions in activities of daily living; no difficulties in maintaining social functioning; only mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, of extended duration." (Tr. 17).

A vocational expert answered interrogatories supplied by the ALJ in this matter. The ALJ relied upon those answers to support his conclusions regarding plaintiff's ability to perform substantial gainful employment.

III.  ARGUMENTS

Plaintiff makes three main arguments in his brief. However, the second and third arguments are somewhat mixed together and shall be considered together in this opinion.

    A.  <u>ALJ's Step Two Analysis</u>

Plaintiff's first argument is that the ALJ erred in failing to find the plaintiff's depression was a "severe" impairment.

The ALJ's decision contains the following discussion of plaintiff's mental status.

> [Plaintiff] underwent a mental status evaluation by Pat Prindaville, Ph.D. in May 2004 at the request of the Social Security Administration. [Plaintiff] related that he is depressed since he cannot do all the things he used to do. He reported that he spends a great deal of time on the computer and when he is having a bad day, spends all day watching TV. [Plaintiff] further reported that he has trouble sleeping at night and has to nap during the day. [Plaintiff] reported that he has gained weight and has to rely on his parents for financial assistance. [Plaintiff] reports that his depression, attention and concentration difficulties occur when his back is severe. On evaluation, [plaintiff] was well oriented, he did not display significant disturbances with judgment, memory, fund of information, or abstract reasoning and he denied problems with attention or concentration unless in pain. Dr. Prindaville stated that issues from the claimant's past have collided with his physical problems and resulted in a mood disorder that is reasonably significant and that would interfere with job performance. Therapy and anti-depressant medication were recommended.
>
> However, [plaintiff] receives no ongoing psychiatric therapy, and takes no medication for his depression. The [ALJ] agrees with the opinion of the State agency medical consultant who provided a Psychiatric Review Technique Form (PRTF) and reached the conclusion that the

> [plaintiff's] depression caused no restrictions in activities of daily living; no difficulties in maintaining social functioning; only mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, of extended duration. Therefore, depression is not a severe impairment.

(Tr. 17).

The Tenth Circuit has held that as long as the ALJ finds that a claimant has <u>any</u> severe impairment, then there is no reversible error <u>per se</u> in finding that a particular impairment is not severe. <u>Hill v. Astrue</u>, 2008 WL 3339174 at *2 (10th Cir. 2008) (citing <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1256-57 (10th Cir. 2007)).  The ALJ is merely required to perform the remaining steps of the analysis correctly, and these steps may include determining whether the effect of <u>all</u> of the claimant's medically determinable impairments, "severe" and "non-severe," renders plaintiff disabled from all substantial gainful employment.

This leads to the question of whether the ALJ did perform the remaining steps of the analysis correctly.  Plaintiff does not contend that the ALJ's approach was flawed with regard to step three of the sequential analysis.  As for step four, the Tenth Circuit has noted that there are three phases to step four of the sequential analysis.

> In the first phase, the ALJ must evaluate the claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations

>   found in phase one. At each of these phases, the ALJ
>   must make specific findings.

Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007) quoting, Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

The ALJ performed the first phase of step four. He evaluated plaintiff's physical and mental RFC. Plaintiff contends that the ALJ incorrectly evaluated plaintiff's mental capacity when he concluded that plaintiff's depression was non-severe. The ALJ stated that he agreed with the Psychiatric Review Technique form completed by Dr. Collins. This form indicated that the only degree of mental limitation suffered by plaintiff was mild difficulty in maintaining concentration, persistence or pace. (Tr. 239). Although plaintiff argues otherwise, the court does not believe this conclusion is significantly different than the comments made in Dr. Prindaville's report. Dr. Prindaville noted that: plaintiff was oriented to time, place, person, and situation; he displayed no psychotic symptoms; his mood was reasonably euthymic; he was able to maintain self-control; his insight was moderate; his sensory and perceptual processes were intact; and he was able to maintain concentration and attention unless pain became problematic. (Tr. 225).

Plaintiff points out that, despite these comments, Dr. Prindaville assigned plaintiff a GAF score of 50, which indicates serious symptoms or a serious impairment in social, occupational or

6

school functioning. See Lee v. Barnhart, 117 Fed. Appx. 674 (10th Cir. 2004). However, "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." Id. It is a piece of evidence to be considered with the rest of the record; it may be of considerable help to the ALJ in determining the RFC, but it is not essential to the RFC's accuracy. Petree v. Astrue, 2007 WL 4554293 (10th Cir. 2007). This case appears similar in some ways to Eden v. Barnhart, 109 Fed.Appx. 311 (10th Cir. 2004) where a GAF score of 50 did not appear consistent with the mental abilities of the claimant relative to employment. As in Eden, the court does not find the GAF score to be controlling here. It is not consistent with "evaluative results" in Dr. Prindaville's report, and those results appear consistent with the ALJ's findings regarding plaintiff's mental impairments.

Any other criticisms plaintiff makes with regard to the consideration of plaintiff's depression in the ALJ's step four or step five analysis are not persuasive to the court. Therefore, the court finds that the ALJ did not commit an error requiring reversal when he determined that plaintiff's depression was not severe.

B. Credibility and RFC findings

The ALJ concluded that plaintiff retained the functional capacity to do light work that did not require more than occasional climbing or exposure to vibration. This included plaintiff's prior

job as a general hardware salesperson. In plaintiff's second and third arguments, he argues that the ALJ's step four analysis of plaintiff's RFC was flawed because the ALJ's examination of plaintiff's complaints and credibility was incomplete and not supported by the evidence in the record.

1. The ALJ's credibility analysis

The ALJ reviewed the medical reports in the record prior to stating a conclusion regarding plaintiff's credibility. (Tr. 18-19). He noted that Dr. Siler released plaintiff to return to light duty work about a month after plaintiff injured his lower back on January 16, 2003. He remarked that plaintiff only used over-the-counter medication to treat his pain. (Tr. 19). The ALJ described the results of plaintiff's ERGOS evaluation by a physical therapist which appeared to find that plaintiff could perform all sedentary labor positions and most light level employment.[1] He also noted that plaintiff sat continuously for 33 minutes during an examination by Dr. Mills and seemed to do so comfortably. The ALJ cited opinions to the effect that plaintiff's flexibility and tolerance for standing could be improved with stretching exercises and daily walking. The ALJ also thought that plaintiff's activities of daily living exhibited an ability of plaintiff to

---

[1] The limits on continuous sitting or standing found in the ERGOS evaluation appear to restrict the jobs available to a greater degree in the opinion of the vocational expert (Tr. 164-67) than is acknowledged in the ERGOS evaluation.

8

care for himself.

Ultimately, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 19).

2. <u>Credibility standards</u>

In <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995), the court set forth some guidance for examining credibility findings.

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." <u>Diaz v. Secretary of Health & Human Servs.</u>, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted); <u>see also Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical) . . .

In evaluating the credibility of plaintiff's complaints of pain, an ALJ should consider such factors as:

> "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

<u>Kepler</u>, 68 F.3d at 391 (quoting, <u>Thompson v. Sullivan</u>, 987 F.2d

9

1482, 1489 (10th Cir. 1993)).

The Tenth Circuit, however, "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). It is important that the ALJ provide an "objectively reasonable explanation over mere intuition." White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002).

   3. Review of the record

The ALJ found only that plaintiff's testimony was not "entirely credible" with regard to the limiting effects of plaintiff's impairments. The ALJ did not explicitly delineate what limitations were not believable. As noted below, there are statements in the record which generally support plaintiff's credibility, as well as medical opinions which place greater limitations upon plaintiff's RFC than those found by the ALJ.

For instance, while the ALJ and defendant refer to Dr. Siler for support of the ALJ's findings, Dr. Siler also supports the plaintiff's position. Plaintiff saw Dr. Siler for less than a month after plaintiff injured his back. While Dr. Siler did release plaintiff to return to light duty work, this was conditioned on plaintiff not standing or sitting for more than one hour at a time. (Tr. 177). The ALJ did not place such a limitation

upon plaintiff's RFC.

Plaintiff began seeing Dr. Drake for treatment after he decided to stop seeing Dr. Siler. As the ALJ noted, Dr. Drake determined that plaintiff was still unable to work as of April 18, 2003, although plaintiff had experienced some improvement. (Tr. 184). Plaintiff then began seeing Dr. Peterson. Dr. Peterson arranged for plaintiff to receive facet injections in August, September and October 2003. This provided some relief to plaintiff. But, the record does not support a finding that plaintiff experienced such relief, for instance, that he could return to his prior employment. Defendant's brief makes reference to a notation by Dr. Peterson that plaintiff's "functional capacity exam showed he can work a[] type of light duty level." (Tr. 199). This appears to refer to plaintiff's ERGOS evaluation which the court shall now discuss.

Plaintiff's ERGOS evaluation by a physical therapist was conducted in June 2003. The evaluation mentioned that plaintiff was able to stand for up to 6 hours on a frequent basis and sit continuously for 30 minutes with no weight shifting observed. (Tr. 210). The evaluation determined that plaintiff met the maximum Department of Labor requirements for sedentary work and most of the requirements for light work. Other findings were that plaintiff could stand or walk continuously for 1 hour at a time and sit continuously for one hour at a time. (Tr. 215). Again, these were

11

findings the ALJ did not incorporate in his RFC conclusions.

The ALJ referred to Dr. Mills' examination of plaintiff in January 2004. Dr. Mills noted that plaintiff was a "good historian" and that the "information he reported was consistent with the medical records provided."[2] (Tr. 218). Dr. Mills also made findings suggesting that plaintiff could not stand continuously for more than one hour. He reported:

> [Plaintiff] notes pain in the low back which he describes as a pressure kind of pain with numbness in the left thigh on occasion. The pain is aggravated by prolonged standing of 30 to 45 minutes or bending. It is eased if he reclines or gets off his feet or if he pushes a grocery cart at the store and is able to put his weight on it, this does seem to ease his discomfort. He has had physical therapy but none since a bit before he was evaluated by Dr. Peterson. Medications are only over-the-counter Aleve. He is not under the care of a physician. The pain is reported as a constant pressure. On a scale from 0 (no pain) to 10 (excruciating pain), [plaintiff] reports the pain now is a 2. During the past month the pain averaged 4 to 5, with a high of 8 and a low of 2. He denies any other difficulties.

(Tr. 219). When discussing plaintiff's occupational history, Dr. Mills commented: "His restrictions are 20 lbs. to the bench, 10 lbs. overhead, standing 30 minutes followed by sitting and resting for 30 minutes." (Tr. 219). While Dr. Mills noted that plaintiff appeared to sit continuously and comfortably for 35 minutes during the interview (Tr. 220), he concluded that there were limits to plaintiff's ability to stand for periods at a time:

---

[2] Dr. Prindaville also commented that she did not think plaintiff was malingering. (Tr. 226).

> [A]t this time I don't think [plaintiff] could stand for
> longer than about 45 minutes. Generally with spinal
> stenosis and his forward flexed posture, there is going
> to be some swelling of the spine and a person after about
> 30 to 45 minutes becomes more numb and weak and standing
> becomes very difficult. I don't know that the standing
> restrictions are necessarily permanent. If he could
> tolerate doing exercises and stretching and flexibility
> with daily walking, [it] may be possible to improve his
> standing tolerance substantially.

(Tr. 222).

As discussed previously, the ALJ mentioned plaintiff's activities of daily living: that plaintiff needs no assistance with cooking or laundry; that he spends 12 to 15 hours a week on household chores; that he watches TV for four to five hours per evening and is on the computer for about 10 to 12 hours per week; and that defendant can drive and is able to leave his house without assistance. However, the ALJ did not refer to the third-party report from defendant's stepfather which largely corroborated plaintiff's account of his activities of daily living. (Tr. 105-113). Defendant's stepfather indicated that it took plaintiff two or three times longer to do household chores because of his disability. These statements regarding plaintiff's activities of daily living are not inconsistent with a limitation on the length of time continuously sitting or standing and with a requirement of time to rest.[3]

---

[3] Defendant's brief makes reference to plaintiff's work in his brother's auto detailing business. The ALJ found that this work did not constitute substantial gainful employment and did not refer to it in support of his credibility finding or his RFC findings.

The ALJ did not mention that plaintiff has a substantial work history which is a factor that may be considered in support of plaintiff's credibility.  20 C.F.R. § 404.1529(c)(3).

It should be further noted that during his testimony before the ALJ, plaintiff stated that he lacked medical insurance and that this limited his visits to a doctor.  (Tr. 275).  Plaintiff also testified that he usually took eight ibuprofen or two Aleve a day to mitigate his pain.  (Tr. 269-70).

Plaintiff testified that he was able to stand in a stationary position before changing his position for 10 to 15 minutes at most. (Tr. 271).  Plaintiff further testified that he was able to sit in a stationary position for 30 to 45 minutes.  (Tr. 271).  He also testified that his back pain causes him to have insufficient sleep at night which, in turn, requires him to take lengthy naps three or four times a week. (Tr. 272).  This court finds that the credibility of this testimony is supported by the medical findings, medical opinion, and third-party opinion contained in the record. We do not believe that it is contradicted by the evidence of plaintiff's activities of daily living.  See Thompson, 987 F.2d at 1490 (ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain.)  Nor is it contradicted by the medical evidence and medical opinions in the

---

We do not find that it is substantial evidence in support of the ALJ's conclusions.

14

record.

The ALJ found that plaintiff retained the RFC to sit 6 hours in an 8-hour day and stand/walk for 6 hours in an 8-hour day. The ALJ did not make any findings regarding plaintiff's need to alternate between sitting and standing or plaintiff's need to take a break from work activity. The vocational expert stated, however, that placing an alternating sitting and standing limitation upon the jobs plaintiff could perform would erode the number of jobs which could be considered by 85%. (Tr. 166). He further stated that no jobs would be available for a person who needed to take a break randomly or who needed to take a lengthy nap. (Tr. 166-67). Therefore, the failure of the ALJ to give appropriate credit to the claimed limits in plaintiff's capacity to continuously stand or sit, as well as credit to plaintiff's claimed need to rest, may have a substantial impact upon the conclusion that plaintiff can perform substantial gainful employment.

4. Conclusion

For the above-stated reasons, the court finds that the ALJ's credibility and RFC findings are not closely and affirmatively supported by substantial evidence.

IV. REMAND

The court shall reverse the decision of defendant to deny

benefits because the ALJ did not properly conduct the analysis of plaintiff's credibility and did not properly perform the RFC assessment for reasons discussed in this order.  The court shall order that the denial of benefits be reversed and that the case be remanded to the Commissioner for further proceedings consistent with this opinion.  This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 20th day of November, 2008 at Topeka, Kansas.


                                      s/Richard D. Rogers
                                      United States District Judge